# FOR PUBLICATION

FILED & ENTERED

FEB 18 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY craig          DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – Riverside Division

| | |
|---|---|
| In re | Case No. 6:15-bk-12567-SC |
| CHUNCHAI YU, | Chapter 7 |
| Debtor. | Adversary No. 6:15-ap-01153-SC |
| | |
| NAUTILUS, INC., | **ORDER AND MEMORANDUM DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| vs. | Date: January 13, 2016 |
| CHUNCHAI YU aka KATHERINE YU, | Time: 1:30 p.m. |
| Defendant. | Ronald Reagan Federal Building and U.S. Courthouse |
| | Courtroom 5C |
| | 411 West Fourth Street |
| | Santa Ana, CA 92701 |

Before the Court is Plaintiff Nautilus, Inc.'s ("Plaintiff") motion for summary judgment [Dk. 12] ("Motion for Summary Judgment") filed November 24, 2015, which seeks a determination that a $4 million judgment against Debtor Chunchai Yu a/k/a Katherine Yu ("Defendant") is non-dischargeable under 11 U.S.C. § 523(a)(6)[1] based upon issue preclusion. The Defendant filed her opposition [Dk. 21] ("Opposition") on December 23, 2015, and the Plaintiff filed its reply [Dk. 22] ("Reply") on December 29,

---

[1] Unless otherwise indicated, all chapter or section references are to Title 11 of the United States Code.

2015. The matter came on for hearing on January 13, 2016.  Samuel Watkins, Esq., appeared on behalf of Plaintiff, and Jeffrey Nadel, Esq. appeared on behalf of Defendant.

Upon consideration of the Motion for Summary Judgment, the Opposition, the Reply, oral argument of counsel, and the record as a whole, and for good cause shown, this court GRANTS summary judgment in favor of Plaintiff pursuant to § 523(a)(6) and based upon issue preclusion.

## I.     BACKGROUND

As set forth below, the background of this proceeding is composed of certain undisputed facts. The following facts are undisputed:

1.     On January 28, 2010, the Plaintiff filed a civil action against the Defendant in the United States District Court for the Central District of California, captioned *Nautilus, Inc. v. Chunchai Yu, et al.*, Case No. 2:10-cv-00624-MMM-MAN ("Civil Case"). Defendant's Statement ¶14.

2.     The Defendant filed an answer [Declaration of Samuel R. Watkins ("Watkins Declaration") [Dk. 16, Exh. 2]] which contained affirmative defenses and a certification of interested parties [Watkins Declaration Exh. 3] in the Civil Case on February 19, 2010. Defendant's Statement ¶19.

3.     The same day the Defendant filed her answer, on February 19, 2010, the United States District Court for the Central District of California handed down an indictment ("Criminal Indictment") of the Defendant in the criminal case of *United States of America v. Chunchai Yu*, 2:10-cr-00171-PA ("Criminal Case") on charges of bribery and trafficking in counterfeit goods, including trafficking in counterfeit BOWFLEX® brand exercise equipment. Defendant's Statement of Genuine Issues in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Statement") [Dk. 21-2, ¶¶9, 72].

4.     Counts Four, Five, and Six of the Criminal Indictment allege that Defendant violated 18 U.S.C. § 2320(a) specifically with respect to trafficking in exercise

equipment bearing counterfeit versions of the BOWFLEX®, BOWFLEX XTREME®, and

SELECTECH® trademarks. Defendant's Statement ¶10.

5.      On April 12, 2010, approximately two months after the Criminal

Indictment, the Defendant appeared in person at the offices of the Plaintiff's legal

counsel and presented to the Plaintiff's counsel a typewritten statement that reflected

the following complete statement ("Typewritten Statement"):

> Chunchai Yu,
>
> I formally decline to provide any information to the plaintiff due to a
> Criminal Case currently in process for which I have pleaded not guilty.
>
> I am not a lawyer and I don't fully understand the process of the civil case
> so I prefer not to complicate matters until my other case has been
> resolved.
>
> I reserve the right to request any disclosure from the plaintiff following the
> court appointed deadlines and wish only to communicate with Jerome
> Friedberg the attorney acting on the case.

Defendant's Statement ¶20; Watkins Declaration Exh. 4.

6.      The Defendant filed the following documents, in addition to her answer, in

the Civil Case: (1) an initial Rule 26(f) joint report [Watkins Declaration Exh. 5] on April

19, 2010 [Defendant's Statement ¶22]; (2) a joint ADR program questionnaire [Watkins

Declaration Exh. 6] in the Civil Case on April 19, 2010 [Defendant's Statement ¶24]; (3)

a joint request to continue a scheduling conference [Watkins Declaration Exh. 7] with

the District Court on May 11, 2010 [Defendant's Statement ¶25]; and (4) a revised Rule

26(f) joint report [Watkins Declaration Exh. 8] on July 28, 2010 [Defendant's Statement

¶26].

7.      On July 15, 2010, after a federal jury trial, the Defendant was found guilty

on all counts alleged in the Criminal Indictment in the Defendant's Criminal Case.

Defendant's Statement ¶12.

8.      The Defendant personally attended a scheduling conference before the

District Court on August 2, 2010 in the Civil Case, approximately two weeks after her

1   Criminal Indictment and less than one month after she was found guilty in the Criminal

2   Case. Defendant's Statement ¶28.

3       9.      In October of 2010, the Plaintiff served requests for admission [Watkins

4   Declaration Exh. 11] ("RFAs") on the Defendant, and the Defendant never responded to

5   the RFAs. Defendant's Statement ¶¶29, 30.

6       10.     On January 10, 2011, the Defendant failed to appear at a scheduling

7   conference in the Civil Case, and the District Court issued an order to show cause

8   ("OSC") why the Defendant's answer should not be stricken and a default entered

9   against her. Defendant's Statement ¶¶32, 33. The OSC required the Defendant to submit

10  written response no later than January 24, 2011.  Defendant's Statement ¶34.

11      11.     The Defendant did not respond to the OSC [Defendant's Statement ¶35],

12  and on February 10, 2011, the District Court ordered the Defendant's answer stricken

13  and a default entered against her, and that the Plaintiff file a motion for default

14  judgment by no later than March 31, 2011. Defendant's Statement ¶¶36, 37.

15      12.     The District Court entered default in the Civil Case on February 10, 2011,

16  and the Plaintiff filed a motion for default judgment on March 31, 2011. Defendant's

17  Statement ¶¶38, 39. The Plaintiff served the Defendant with the motion for default

18  judgment. Defendant's Statement ¶40. The Defendant did not respond to the motion for

19  default judgment. Defendant's Statement ¶41.

20      13.     On December 19, 2011, the District Court entered a default judgment

21  [Watkins Declaration, Exh. 23] ("Default Judgment") in the Civil Case against the

22  Defendant for $4 million in statutory damages for willful trademark infringement under

23  the Lanham Act, 15 U.S.C. § 1117(c), plus interest at 0.11 percent. Defendant's Statement

24  ¶15. On the same day, December 19, 2011, the District Court entered an order granting

25  the Plaintiff's motion for default judgment [Watkins Declaration, Exh. 22] ("Default

26  Judgment Order"). Defendant's Statement ¶58.

27      As fully set forth below, the Court finds that there are no genuine issues of

28  material fact and that summary judgment is therefore appropriate. The Court finds that

the detailed findings contained in the Default Judgment and Default Judgment Order are preclusive and conclusively establish that the Plaintiff is entitled to a non-dischargeable judgment against the Defendant in the amount of $4,000,000.00, plus 0.11% interest, pursuant to 11 U.S.C. § 523(a)(6).

## II.    DISCUSSION

As discussed below, the Court will address the standards for summary judgment, federal issue preclusion, and the "willful and malicious" standard under § 523(a)(6).

### A.    Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(c); Fed. R. Bankr. P. 7056 (establishing that Rule 56 applies to adversary proceedings). An issue is "genuine" only if a reasonable fact finder, looking at the evidence, could find for the non-moving party, and a dispute is "material" only if it could affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the moving party would bear the burden of proof at trial, the moving party has the initial burden of establishing that no genuine issues of material fact exist. *Id.* at 256-57. The court must view all of the evidence in the light most favorable to the non-moving party. *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 788 (9th Cir. 2007).

### B.    Issue Preclusion

The preclusive effect of a prior federal judgment is determined by federal law. *In re Daily*, 47 F.3d 365, 368 (9th Cir. 1995). The elements of federal issue preclusion are as follows:

> (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

*In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000) (citing *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992)). *See also Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993).

With respect to the Default Judgment and the Default Judgment Order, the parties do not dispute elements (3) and (4). The Court finds that the parties to the Default Judgment and Default Judgment Order are final judgments and that the parties are the same. The parties do dispute whether the Defendant was given a full and fair opportunity to litigate the previous Civil Case and whether the issue was "actually litigated" in the Civil Case. These elements are addressed below.

### 1. Full and Fair Opportunity to Litigate

In determining whether a party had a "full and fair opportunity to litigate," courts in the Ninth Circuit are instructed to make a "practical judgment" based on at least two considerations. *Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007) (citations omitted). First, if the procedures used in the first and second actions vary enough to raise the potential for a different result, issue preclusion is inappropriate. *Id.* Second, if the party's motivation differed in the two actions, whereby an issue in the first action did not need to be contested as significant, issue preclusion should not prevent the litigation of that issue in a subsequent action. *Id.*

Here, the procedural opportunities in this proceeding are the same opportunities that were available to the Defendant in the Civil Case. Both cases are civil proceedings in federal courts, and there is no reason to doubt the quality, extensiveness, or fairness of the procedures followed by the District Court in the Civil Case. Indeed, there is no argument that notice was improper or that the District Court's procedures otherwise impinged upon the Defendant's due process rights. Moreover, the Defendant's motivation to litigate the Civil Case is important. *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4423, at 612 (2d ed. 2002) ("The most general independent concern reflected in the limitation of issue preclusion by the full and fair opportunity requirement goes to the incentive to litigate

vigorously in the first action.")).  Here, the Defendant had a very strong incentive to litigate the Civil Case based upon the reasonably foreseeable likelihood that a large civil judgment may be rendered against her.

The Defendant has provided no evidence or argument to directly address these points. Rather, the Defendant raises other arguments as to why she believes she did not have a full and fair opportunity to litigate the Civil Case. *See* Opposition at pages 13-17. The Court will address these arguments below; none are persuasive.

### The Defendant's First Argument:

### Lack of Legal Representation in the Civil Case

The Defendant raises the fact that she was not represented by an attorney in the Civil Case. Specifically, the Defendant indicates that her lack of legal counsel of record in the Civil Case means that she was not afforded a "full and fair opportunity" to litigate the Civil Case. Opposition at page 13, lines 26-27 ("It is . . . significant whether the defaulting party was *pro se* in the defaulted proceeding but represented in the subsequent proceeding.").[2]

Contrary to the Defendant's arguments, federal preclusion law provides that lack of a legal representation in a civil matter does not destroy the "full and fair opportunity to litigate" element of issue preclusion. *See Larson v. United States*, 89 Fed. Cl. 363, 395 (2009) *aff'd*, 376 F. App'x 26 (Fed. Cir. 2010) (noting that plaintiffs who chose to proceed *pro se* had full and fair opportunity to litigate). There is no absolute right to counsel in a civil case. *See Hedges v. Resolution Trust Corp.*, 32 F.3d 1360, 1363 (9th Cir. 1994); *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat*

---

[2] The Defendant cites *In re Haskin*, 68 B.R. 370 (Bankr. S.D. Ohio 1986) and *In re Roberson*, 92 B.R. 263, 264 (Bankr. S.D. Ohio 1988) in support of her argument that her lack of counsel thwarts her "full and fair opportunity" to litigate. Neither case supports her position. *Haskin* was not actively litigated, and therefore no preclusion applied. The fact that the debtor in *Haskin* was *pro se* was completely immaterial to the court's decision not to apply issue preclusion. Instead, the court found that the underlying default judgment (a municipal state court judgment) was not "actually litigated" under state preclusion law. *In re Haskin*, 68 B.R. at 372. Here, federal preclusion law applies, and the Defendant did actively participate. The *Roberson* case is equally inapposite as it again dealt with the preclusive effect of a state court default judgment which was not actually litigated under state preclusion law. In fact, the *Roberson* court's only mention of "representation" appears to be *dicta*. *See In re Roberson*, 92 B.R. at 264. These cases have never been cited for the proposition that lack of counsel vitiates a default judgment's preclusive effect.

*Cty., State of Wash.*, 795 F.2d 796, 801 (9th Cir. 1986) (citing *Lassiter v. Department of Social Services*, 452 U.S. 18, 25-27 (1981); *Peterson v. Nadler*, 452 F.2d 754, 757 (8th Cir. 1971)). Indeed, in the Ninth Circuit B.A.P. case of *Shepard*, the debtor argued that because he was unrepresented by legal counsel in the underlying proceeding, he lacked a full and fair opportunity to litigate the underlying proceeding. *In re Shepard*, No. ADV.08-1210-WRL, 2009 WL 7809003, at *8 (B.A.P. 9th Cir. Nov. 24, 2009) (unpublished). The B.A.P. rejected this argument, holding that a full and fair opportunity to litigate simply means that the debtor had a "reasonable chance to appear in court and contest the factual and legal issues raised . . . not that the debtor should have equal footing from a tactical standpoint." *Id.*

The Defendant's first argument fails.[3]

## **The Defendant's Second Argument:**

### **The Defendant was "Prevented from" Participating in Civil Case "Because of" the Pending Criminal Matter**

The Defendant's second argument as to why she lacked a "full and fair opportunity" to litigate is that she "was effectively prevented from any meaningful participation in the civil trial because of the pending criminal matter." Opposition at page 14, lines 11-12.

To the extent that the Defendant is arguing that she lacked a "full and fair opportunity" to litigate the Civil Case because she feared her participation in the Civil Case might adversely impact her Criminal Case, the Court finds this argument disingenuous and unavailing. The Civil Case was commenced on January 28, 2010. The Defendant filed her answer in the Civil Case on February 19, 2010. On July 15, 2010, the Defendant was found guilty in the Criminal Case. In August of 2010, the Defendant personally appeared at a scheduling conference in the Civil Case. It was only in February of 2011—several months *after* the Defendant was found guilty in Criminal Case—that

---

[3] The Court notes that the Defendant is educated. She states in her declaration that she has undergraduate and master's degrees from universities in the United States. Declaration [Dk. 23, ¶4].

1  the District Court struck the Defendant's answer in the Civil Case because the Defendant

2  failed to obey a court order.  These facts are undisputed, and they reflect that the

3  Defendant had already been found guilty in the Criminal Case long before she violated

4  the District Court's order in the Civil Case, resulting in her answer being stricken and a

5  default being entered against her.

6         The Defendant points out that she provided the Typewritten Statement (defined

7  and quoted above, verbatim) to the Plaintiff's counsel, but then the Defendant states

8  that this may not have constituted an "informed choice to invoke the Fifth Amendment"

9  and that this issue "is a legal issue to be determined by this Court." Defendant's

10 Statement ¶21. To the extent that this assertion implies that the Defendant was not

11 adequately represented by legal counsel when she presented the Typewritten Statement

12 to the Plaintiff's attorney, this argument lacks merit for reasons stated above.

13        Even if the Typewritten Statement was an invocation by the Defendant of her

14 Fifth Amendment right to avoid self-incrimination, such invocation does not by itself

15 obviate the preclusive effect of the Default Judgment or the Default Judgment Order.

16 *See Samirah v. Sabhnani*, 772 F. Supp. 2d 437, 444 (E.D.N.Y. 2011) ("[T]he Court finds

17 that the defendants' invocation of their Fifth Amendment privilege in the criminal

18 proceeding does not affect the concept of whether the defendants had a 'full and fair

19 opportunity for litigation in the prior proceeding,' and is no bar to the application of the

20 doctrine of collateral estoppel."); *In re Brown*, 427 B.R. 715, 722 (D. Minn. 2010)

21 (finding that SEC judgment in civil enforcement action was preclusive even though

22 defendant invoked Fifth Amendment right against self-incrimination); *In re Birnbaum*,

23 513 B.R. 788, 802 (Bankr. E.D.N.Y. 2014) ("Nearly all bankruptcy courts that have

24 considered the issue conclude that even when a party invokes his Fifth Amendment

25 privilege in the prior suit, the 'actually litigated' requirement for purposes of collateral

26 estoppel may nevertheless be satisfied.") (internal quotation marks omitted). There is no

27 allegation that the District Court's procedural mechanisms prevented the Defendant

28 from litigating the Civil Case. This is not a case in which a defendant invoked her Fifth

Amendment privilege against self-incrimination and then immediately ceased all further

activity in the case.  Indeed, the Defendant actively participated in the Civil Case for

several months *after* she delivered the Typewritten Statement and even after she had

been found guilty by a jury in the Criminal Case of all counts in the Criminal Indictment,

including violations under 18 U.S.C. § 2320(a) for trafficking in exercise equipment

bearing counterfeit versions of the BOWFLEX®, BOWFLEX XTREME®, and

SELECTECH® trademarks. *See* Defendant's Statement ¶10.

The Defendant has provided no legal authority which would allow the Defendant

to simply "plead the Fifth" early on in a civil case and then continue participating in the

civil litigation, only to belatedly raise this "Fifth Amendment argument" in later

proceedings as a tactic to avoid the preclusive effects of the adverse judgment rendered

against her in the earlier civil proceeding. Where a defendant invokes her Fifth

Amendment right against self-incrimination in a civil proceeding, she does so at her

own peril. *See In re Francis*, No. ADV 11-01245, 2013 WL 3497657, at *5 (B.A.P. 9th Cir.

July 12, 2013) (applying Arizona preclusion law, which panel found was same as

Restatement (Second) of Judgments, and noting that "a refusal to testify in a civil

proceeding is done at one's own peril and does not preclude an adverse inference."

(citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976))).

### **The Defendant's Third Argument:**

### **The Default Judgment Order is "Contrived," "Manufactured," or**

### **Otherwise Wrongly Decided**

The Defendant raises a litany of arguments as to why the Default Judgment and

Default Judgment Order were "contrived," "manufactured," and otherwise wrongly

decided by the District Court, including an argument that the $4 million in statutory

damages awarded were miscalculated. Defendant's Statement ¶60.

The Defendant's arguments include that the Default Judgment Order is: "in no

way a realistic account of the events that led up to this proceeding" [Opposition at page

14, lines 24-25]; "heavily dependent on . . . hearsay" [Opposition at page 15, line 7];

"false or the product of a misunderstanding due to [the Plaintiff's] language barrier and the extreme stress of being interrogated essentially at gunpoint while being threatened with jail" [Opposition at page 15, lines 10-12]; and "entirely based upon its self-serving allegations and notices to admit, which [the Defendant] was unable to answer without jeopardizing her criminal trial"[4] [Opposition at page 14, lines 21-23].

The Defendant states in her declaration that "I believed that these good were what are commonly called 'grey market' goods."[5] Declaration of Chunchai Yu [Dk. 23] at ¶8. To the extent the Defendant is attempting to relitigate the issue of knowledge or intent, she is precluded from doing so by the findings in the Default Judgment Order. Further, this Court has no authority to revisit the substantive findings and determinations made by the District Court. This is not an appellate court. The Defendant never appealed the Default Judgment or the Default Judgment Order. Those findings are final, and the Defendant may not collaterally attack them now as being erroneous. *See Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 306 (D.C. Cir. 2015) ("[W]e have recognized that even a 'patently erroneous' first judgment is insufficient to bar issue preclusion." (citing *Otherson v. Dep't of Justice, I.N.S.*, 711 F.2d 267, 277 (D.C. Cir. 1983)); *City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1869 (2013) ("A court's power to decide a case is independent of whether its decision is correct, which is why even an erroneous judgment is entitled to *res judicata* effect. Put differently, a jurisdictionally proper but substantively incorrect judicial decision is not ultra vires.").

---

[4] The Defendant's argument that she was "unable to answer" the RFAs for fear of "jeopardizing" her criminal trial is misleading and inaccurate. It is undisputed that the RFAs were served upon the Defendant in October of 2010, several months *after* the jury trial had ended as evidenced by the July 15, 2010 jury verdict of guilty in the Criminal Case. Moreover, it is undisputed that the Defendant's answer was ultimately stricken on February 10, 2011, due to the Defendant's own failure to obey the District Court's order in the Civil Case.

[5] To the extent that the Defendant is attempting to manufacture a genuine issue of material fact, this bald statement about her belief is uncorroborated, conclusory, and contradicts the District Court's findings about her knowledge that the Bowflex equipment was counterfeit. *See F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) (affirming district court's determination that uncorroborated declaration was insufficient to create a genuine issue of material fact) (citations omitted).

For these reasons, the Court finds that the Defendant had a full and fair opportunity to litigate the Civil Case. The Defendant has no provided sufficient evidence or argument to the contrary.

**2.    Actually Litigated**

Under federal preclusion law, a judgment rendered by default is generally not preclusive because it is not "actually litigated." *See In re Palmer*, 207 F.3d at 568 (citing *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983); *In re Raynor*, 922 F.2d 1146, 1150 (4th Cir. 1991); *Lombard v. Axtens*, 739 F.2d 499, 502 (10th Cir. 1984)); *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) ("In the case of a default judgment . . . a party may decide that the amount at stake does not justify the expense and vexation of putting up a fight. The defaulting party will certainly lose that lawsuit, but the default judgment is not given collateral estoppel effect.") (citations omitted). However, where a party "actively participates" in litigation, courts will recognize that the matter was "actually litigated," and therefore the default judgment may be preclusive.

Ninth Circuit case law defines "active participation" on a continuum—the more extensive the activity or the more obstructive and dilatory the defendant's behavior in the prior litigation, the more likely the defendant "had her day in court" and the more likely a default judgment will be deemed to be "actually litigated" for federal issue preclusion purposes.

At one end of the spectrum is the case of *Daily*, where the Ninth Circuit found a default judgment to be actually litigated where a party engaged in over two years of obstructive, discovery tactics, culminating in his answer being stricken and a default being entered against him. *In re Daily*, 47 F.3d at 367-68. Further along the continuum is the case of *Gottheiner*, where no obstructive or dilatory behavior was present. In *Gottheiner*, the defendant actively engaged in 16 months of discovery, but then simply chose to "give up," "decide[ing] his case was no longer worth the effort." *Gottheiner*, 703 F.2d at 1140.  Under those facts, the Ninth Circuit found that the defendant had a full and fair opportunity to defend the action on the merits and that the default

judgment was actually litigated. *Id.* At the other end of the spectrum is the case of *Palmer*, where an individual filed a petition to determine his tax liability and "did nothing after that." *In re Palmer*, 207 F.3d at 568. The Ninth Circuit refused to find "actual litigation" because Palmer immediately and totally abandoned the tax proceedings, and this total abandonment was "close enough" to a "classic default." *Id.* The Ninth Circuit panel in *Palmer* specifically distinguished *Gottheiner* based upon these very facts. *Id.* (citing *In re Gottheiner*, 703 F.2d at 1140).

In this case, the Defendant "actively participated" in the Civil Case as a matter of law. The Defendant did not simply "give up from the outset," as in *Palmer*. Rather, the Defendant continued to participate in the Civil Action for several months before ultimately choosing not to respond to the District Court's OSC. Indeed, the Defendant admits that she engaged the following activities[6] in the Civil Case:

- The Defendant filed an answer (which contained various affirmative defenses) and a certification of interested parties on February 19, 2010. Defendant's Statement ¶19.

- The Defendant appeared in person at the offices of the Plaintiff's legal counsel on April 12, 2010 and presented to the Plaintiff's counsel the Typewritten Statement (quoted verbatim *supra*).

- The Defendant filed an initial Rule 26(f) joint report [Watkins Declaration Exh. 5] on April 19, 2010. Defendant's Statement ¶22.

- The Defendant filed a joint ADR program questionnaire [Watkins Declaration Exh. 6] in the Civil Case on April 19, 2010. Defendant's Statement ¶24.

---

[6] The Defendant's Objection states that "[w]hile this Court may take judicial notice of the *contents* of the subject court documents and other filings, it is not permitted to judicially notice the *truth* of the statements therein." Opposition at page 16, lines 1-5 (original emphasis). The Court has only taken judicial notice of the fact that certain documents were, in fact, filed in the Civil Case and the Criminal Case. The Court has not used these documents in any way to establish any "truth" inference.

- The Defendant filed a joint request to continue a scheduling conference [Watkins Declaration Exh. 7] with the District Court on May 11, 2010. Defendant's Statement ¶25.
- The Defendant filed a revised Rule 26(f) joint report [Watkins Declaration Exh. 8] on July 28, 2010. Defendant's Statement ¶26.
- The Defendant personally attended a scheduling conference before the District Court on August 2, 2010. Defendant's Statement ¶28.

This level of participation is similar to the facts of *Gottheiner*, where "actual litigation" was found to be present. Based upon the entire record, the Court finds the Defendant's level of participation to be sufficient to constitute "active participation" in the Civil Case as a matter of law, and it is therefore sufficient to meet the "actual litigation" requirement of federal preclusion law.

The Court finds the Defendant "had her day in court" based upon her full and fair opportunity to defend the Civil Case on the merits, as discussed above. Moreover, the Court finds that applying issue preclusion under these circumstances is consistent with the purpose of the doctrine of "protect[ing] [the prevailing party] from the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." *In re Daily*, at 368-69 (quoting *Montana v. U.S.*, 440 U.S. 147, 153-54 (1979)).

The Defendant is bound by the findings in the Default Judgment and the Default Judgment Order.

## C.    Section 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides that an individual debtor may not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." "Willfulness" and "maliciousness" are analyzed separately. *In re Barboza*, 545 F.3d 702, 706 (9th Cir. 2008) (citations omitted).

**1.    Willfulness**

Under § 523(a)(6), a "willful" injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *In re Barboza*, 545 F.3d at 706 (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)) (emphasis omitted). In the Ninth Circuit, "§ 523(a)(6)'s willful injury requirement is met only when the debtor has a subjective motive to inflict the injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010).

In the area of trademark infringement, the Ninth Circuit B.A.P. has held that "intentional infringement is tantamount to intentional injury under [§ 523(a)(6)]." *In re Smith*, No. ADV.01-02219-A, 2009 WL 7809005, at *9 (B.A.P. 9th Cir. Dec. 17, 2009) *aff'd*, 465 F. App'x 707 (9th Cir. 2012) (unpublished). In *Ormsby*, the Ninth Circuit held that "[t]he Debtor is charged with the knowledge of the natural consequences of his actions." *In re Ormsby*, 591 F.3d at 1206. In applying this principle, the Ninth Circuit found as follows:

> [The debtor] must have known that [the creditor's] injury was substantially certain to occur as a result of his conduct. Because [the debtor] paid for access to the [creditor's proprietary information] for 2000 until present, he was necessarily aware that his use of [the creditor's] [proprietary information] without paying for them had an economic value. The state court explicitly found that [the creditor] suffered injury by granting $141,500 in compensatory damages based on the measure of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret. [The debtor] therefore inflicted willful injury on [the creditor].

*In re Ormsby*, 591 F.3d 1207.

Here, the District Court found that the Defendant "knew the Bowflex exercise equipment she and [a co-defendant] had been importing from China and selling for many years was counterfeit, since the two were able to sell it for half the price." Default Judgment Order at page 30, lines 22-24. Because the Defendant knew she was selling counterfeit Bowflex exercise equipment at half-price, she necessarily must have also known that the Plaintiff's injury was substantially certain to occur as a result of her

conduct. Pursuant to *In re Smith* and *In re Ormsby*, these findings in the Default

Judgment Order conclusively establish the "willfulness" element of § 523(a)(6).

### 2.  Maliciousness

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which

necessarily causes injury, and (4) is done without just cause or excuse." *In re Barboza*,

545 F.3d at 706 (citations omitted) (internal quotation marks omitted). "Malice may be

inferred based on the nature of the wrongful act." *In re Ormsby*, 591 F.3d at 1207 (citing

*In re Littleton*, 942 F.2d 551, 554(9th Cir. 1991)).

Here, the Defendant's conduct was wrongful. She was convicted under 18 U.S.C.

§ 2320(a) for trafficking in counterfeit goods. The Defendant's conduct was also

intentional. In the Civil Case, the District Court found that the Defendant knew the

exercise equipment she was importing was counterfeit because she was able to sell them

for half-price. Default Judgment Order at page 30, lines 22-24. The Defendant's conduct

necessarily caused injury because the act of trademark infringement itself is a

"categorically harmful activity," and the Defendant knew the goods were counterfeit. *In

re Smith*, 2009 WL 7809005, at *10 and *In re Ormsby*, 591 F.3d at 1207.

Finally, the Defendant's conduct was done without just cause or excuse. The

Defendant's only purported excuse is a conclusory and uncorroborated statement that

she believed she was importing "legitimate grey market goods." Opposition at page 11,

lines 20-22.  As discussed above, to the extent the Defendant attempts to upend the

District Court's findings of her knowledge and intent, the Defendant is precluded from

doing so. The Defendant may not collaterally attack the substantive findings contained

in the Default Judgment or the Default Judgment Order. Those findings were never

appealed, and they are final.

The District Court found that the Defendant knew the Bowflex exercise

equipment was counterfeit because she was able to sell them for half-price. The

Defendant has provided no legal authority or evidentiary basis whatsoever to allow this

Court to disregard those findings. *See In re Jercich*, 238 F.3d 1202, 1209 (9th Cir. 2001) (noting that the debtor failed to "point to" a just cause or excuse).

There is no evidence in the record of any just cause of excuse.

### III.    Conclusion

The Motion for Summary Judgment is GRANTED.  The Court will enter a separate non-dischargeable judgment in the amount of $4,000,000.00 in favor of the Plaintiff and against the Defendant pursuant to § 523(a)(6).

###

Date: February 18, 2016

Scott C. Clarkson
United States Bankruptcy Judge